Mr. Justice Story
delivered the opinion' of the Cdurt, and), after stating the. case, proceeded as follows:
Nothing, cañ be clearer, both upon principle and *703 authority, than the doctrine, that the liability of a surety is not to. be extended, by implication, -beyond the terms of his contract. To the extent* and in the manner, and under thb circumstances, pointed out in his obligation, he is bound, and no farther. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit.. He has a right to stand upon the \fery terms of his: contract; and 'if he does not assent to any variation of it* arid a variation is made, it'is fatal. And Courts of equity, as well as of law, have been in the constant habit of scanning the-contracts of sureties with considerable strictness. The class of cases which have been cited at the bar, where persons have been bound for the good conduct of clerks of merchants, and other persons, illustrate this position. The whole series, of them, from Lord Arlington v. Merrick, (2 Saund. 412.) down to that of Pearsall v. Sumniersett, (4 Taunt. 593.) proceed upon the ground, that the undertaking óf the surety is to receive a strict interpretation, and is not to be extended beyond the fair scope of its terms. Therefore, where an indemnity bond is given to partners, by name, it has Constantly been held, that the undertaking stopped upon the admission of a new partner. And the only case, that of Barclay v. Lucas, (1 T. R. 291. note a.) in which a more extensive construction is supposed to have been given, confirms the general rule; for that turned upon the circumstance, that the security was given to the house, as a banking-house, and thence an intention was inferred, that *704 the parties intended to cover all losses, notwithstanding a change of partners in the house.
^ow> what is the purport of the terms of the present condition ? The recital stated a special appointment, which had then been made by Miller, of his deputy for eight townships, particularly named. It was not a case of several distinct appointments fpr each township, but a single and entire appointment for all the townships; and the condition is, that Ustick'has, and “shall continue, truly and faithfully to discharge the duties, of mid ttqypo'mtment, according to law.” Of what appointment ? Plainly the appointment stated in the recital, to which the condition refers, and to which it is tied up; that is to say, the appointment already made and executed for the eight townships.. ■ If this be the true construction of the condition, and it seems impossible to doubt it, then the only hiquiry that remains is, whether any money unaccounted for Was received under that appointment* To this the plea answers in the-negative,• unless the Subsequent alteration of the instrument ere-: aíéd no legal change in the appointment. To the consideration of this point, therefore; the ¿Mention of the Court will be addressed.
And, in the first place, upon principle, how does the case stánd ? Cáh it be affirmed, that the alteration' Wrought nO. change in the appointment? This will scarcely be pretended. In point Of fact, the first appbtn tmefrt'was for eight townships only; the alteration tnadé it an appointment for nine1 townships. It is not like the case where an appointment is made for eight townships, and an *705 other distinct appointment is; made for the ninth; for then there are, in legal contemplation, two.distinct and separate appointments. But- here, the . . . . . , , . j original appointment is extended,; it was one ana entire, when it included eight township; it is one and entire, when it includes the nine. Can it then be legally affirmed to remain the same appointment, when it no longer has the same boundaries?. An appointment for A. is not the same as an .appointment for A. and B. In short, the very circumstance, that there is an alteration in the appointment, ex m termini, imports that its identity is gone. If an original appointment is altered by the consent of the parties to the instrument, that very consent implies, that something is .added to or taken from it. The parties agree, that it shall no longer remain as it was at first, but that the same instrument shall be, not what it was^.-but what the alteration makes it. It shall not Constitute two separate and distinct instruments, but cute consolidated instrument. A familiar case will efe plain this. A. gives a note to B. for 500 dollars; the: parties afterwards agree to alter it to 600 dollars.- In such case, the instrument remains single; it is not a note for 500 dollars, and also for 600 dollars, involving separate and distinct liabilities, but an entire contract for 6Ó0 dollars; and the obligation to pay the 500 dollars is merged and -extinguished in the obligation to pay.the 600 dollars. To bring the. case nearer to the present: suppose there was a bond given, as- collateral security, to pay the note of 500 dollars; it will scarcely be pretended, that the alteration would not extinguish *706 the liability under the bond. The instrument. would, indeed, remain, but it would no longer possess its former obligation and identity. Nothing can be better settled, than the doctrine that, if an obligation be dependent on another obligation, (and, by parity of reasoning, upon the legal exist-. ence of another instrument,) and the latter be discharged, or become void, the former is also discharged. Sheppard, in his Touchstone, (p. 394.) puts the case, and illustrates it, by adding, “as, if the condition of an obligation be, to perform the covenants of an indenture, and afterwards the covenants be discharged, or become void ;■ by this means, the obligation is discharged, and gone for ever.” It is not denied at the bar, that the same would be the legal operation in the present case, if there had been an actual revocation of the first appointment, or an extinguishment of the instrument of appointment. But the stress of the argument is, that here there was an enlargement, and not an extinguishment, of the appointment; that, the consent of the immediate parties being given to the alteration, it remained in full force, with all its original validity, as to the eight townships. We cannot accede to this view of the case. Aftér the alteration was made, it is, as between the parties, to be considered by relation back, either as.at» original appointment for the nine townships; or as a new appointment for the nine townships, from the time of the alteration. It is immaterial to the present decision, whether it be the one or the other, for in either case it is not that appointment which the defendant, Stewart, referred to in *707 the condition of the bond, and in respect to which he contracted the obligation. It is no answer, to say, that it is not intended to make him liable for. any money, except what was collected in the eight townships. He has a right to stand upon the terms of his bond, which confine his liability to money received under an appointment for eight townships ; and the pleadings admit, that none was received, until the appointment was altered to nine. If will scarcely _be denied, that if, upon the agreement to include the ninth township, the original instrument had been destroyed, and a new instrument had been executed, the obligatory force of the bond would, as to the surety, have been gone. And, in reason or in law, there is no difference between that and the case at bar. The alteration made the instrument as much a new appointment, as if it had been written and sealed anew. Jt is not very material, to decide whether the alteration operated by way of surrender, or as a revocation, or as a new appointment superseding the other, it was, to all intents and purposes, an extinguishment of the separate existence of the appoihtmept for the eight townships..
This point is .susceptible of still farther illustration, from considerations of a more technical nature. The act of Congress of the 22d.of July, 1813, ch. 16. sec. 20. under which this appointment was made, provides, “that each Collector shall be authorized to appoint, by an instrument of writing under his hand and seal, as xnany. deputies as he may think proper,” &c. The appointment must, therefore, be by deed; and thó *708 effect of an alteration or-interlineation of a deed, is to be decided by the principles of the common law; Now,'by the common law, the alteration or interlineation of a deed, in a material part, at least, by the holder, without the consent of the other party, ipso facto, avoids the deed.: It is theconsent, therefore, that upholds the deed after such alteration, or interlineation. The reason is, that the deed is no longer the same. The alteration makes it a different deed; it speaks a different language; it infers a different obligation. It must, then, take effect as a new deed, and that can only be by the consent of the party bound by it. Whether by such consent, the deed takes effect by relation back to the time of original execution, or only from the time of the alteration, need not be matter of inquiry, because such relation is never permitted to affect the rights or interests of third persons, and cannot change the posture of the present case. If the deed, after the alteration, is permitted to have relation back, it is not the same deed of appointment recited in the condition, and to which the obligation is limite^, for that is an appointment for eight townships. If it. has no such relation, then it is a deed of appointment made subsequent to the bond, and of course not included in its obligation.' It cannot be, at one and the same time, a deed for eight, and also a deed for nine townships; and the. very circumstance, that it is the.-one, excludes the possibility of assuming it as the other. In truth, the assent of the parties, to the alteration, carries with it the necessary implication, that it shall no longer be deemed an ap- *709 pomtment for eight townships only; and the same. consent of parties which created, is equally potent in dissolving the deed, and changing its original ° , 4t obligation. It is no objection, that to constitute a new deed, a redelivery is necessary ; for if it be so, the consent to the alteration is, in law, equivalent to a redelivery. Nor is it necessary, that a surrender or revocatipn should be. by an instrument to that effect.. It may be by matter in pais, or by operation of law. Every erasure and inter-lineation in the deed, by the obligee or appointee, without consent, is a surrender ; and a revocation may be implied by law. The passage cited at the bar, from Co. Lit. 232. (a.) establishes, that if the feoffee, by deed of land, grants his deed by parol to the feoffor,, it is a surrender of the property, as well as of the deed. And if, in this cáse, the deed of appointment had been delivered up to the Collector, it would, at once, have operated as a surrender .by the Deputy, and a revocation by the Collector.
An objection has been urged at the bar, against this doctrine, that the act. of Congress, giving the authority to the Collector, to appoint deputies, also authorizes him “ fo revoke the powers of! any deputy, giving public notice thereof in that portion of the District assigned to such-deputy.” Hence it is argued, that no revocation can be, unless by public notice., But this is certainly not the true interpretation of the act. The very terms suppose, that the revocation is already made, as between the parties, and the notice is to be given of the fact. The object of the Legislature was. *710 to protect the public from the mischief of payments to the deputy after his powers are revoked, It requires public notice, to be given of the revocation, so that no future imposition shall be prac-tised ; and if the Collector should make a private revocation, without any public notice, the legal conclusion would be, that all payments made to his deputy, in ignorance of the revocation, ought to be held valid; for no man is entitled to make his- own wrongful omission of duty a foundation of right. Biit, as between the parties, a revocation or surrender,. if actually made, would be, to all intents and purposes,. binding between them, and release the' sureties to the bond from all future responsibility.
Upon the whole, the opinion. of the Court is, that the fourth plea in bar is good, and that the demmter thereto ought to be overruled; and. this opinion is to be certified to the Circuit Court.
Mr. Justice Johnson.
My brother Todd, and myself, are of opinion, that the merits of this cause.have been misconceived, the points on which it turns misapprehended, and the law of razures, if correctly laid down according to the law of the present day, erroneously applied to this cause.
The-condition of . Stewart’s bond to the plaintiff, recites no particular deed of appointment, under which Uatick was constituted Deputy Collector; nor is there an iota in the bond, or in the declaration; that can identify the deed set forth . in the plea, with the deed under which Ustick held his deputation. The condition of the bond simply *711 states, “ Whereas E. M., Collector, as aforesaid, hath, by virtue of authority vested in him by the laws of the United States,, appointed U. Deputy Collector,” &c. It is the plea that'specifies a deed of á particular date, and then proceeds to set forth a razure in avoidance of that deed, but it contains no áverment that the deed ; so set forth is the same under which U. held the deputation under the plaintiff, referred to in the condition. That the plea, is faulty, and, even with the averment, might have been the subject of a special demurrer, cannot now be doubted; for it amounts to the general issue; and the general issue was the legitimate,plea in this case. (Pigofs case; andywts-sim.) But, we also hold it bad, in its present form, upon a general demurrer 5 for, unless the deed, so pleaded, was duly identified by the pleadings, with that under which Ustick. was constituted, deputy, the plaintiff whs not bound to answer it. We cannot conceive how the defendant can have judgment in the present state of the pleadings, unless under.the idea that the demurrer cures the failure to identify the deeds. This, however, cannot be sustained, since the want of identification isj in itself;. a sufficient, ground of-demurrer.
Indeed, we see no-sufficient ground-for admitting that the condition of the bond implies a dé-. putatiori by deed at all. It is true, that the 20th section qf the. act under which this Collector was appointed, authorizes him to appoint deputies, under his hand and seal ; and,, as. far as was. necessary to enable the deputy to; act against individuals,- unquestionably the solemnities of a deed *712 were requisite to constitute him a Deputy Collector. But the demand in this action is for money received by him, and not paid over; and, surely, a deputation of a less formal kind, would have enabled him to bind his principal as to the actual receipt of money; so that the words of the condition do not necessarily imply a deputation by deed. He is expressly authorized, in this 20th .section, to act for himself in collecting the revenue, and he could, therefore, act by his servant or deputy, constituted in a less solemn way than by deed, so far as to involve himself with the government.
But if a deed is to be implied from the condition, surely not this particular deed; and though, a deed, of a dáte antecedent to the bond, is to be implied, it may have preceded it by a month, and yet the act and the condition of the bond both be complied with. But what form shall be presumed or implied to the deed? Why may it not have been several as to each county, or have comprised two or. more?, and why may hot a dozen deeds, of the very date and form of this, have been in existence at the Same time? A defendant who. like the present, places his defence upon the very highest stretch of legal rigour, cannot complain, if . he has the same measure meted out to himself.
But if this ground is to be got overhand we are to consider the bearing of the facts pleaded, upon the law of the case, we then say that they imply no revocation of the deputation , to Ustick, against which this defendant entered into the contract of *713 indemnity. It is the intent that gives effect to the. acts-'of parties; nothing was farther from the minds of the parties here, than the. distinction of the power of Ustick, as to the eight counties, at the time of this interlineation. The plea avers no such intent, and as well might a delivery of a deed for perusal be tortured into a surrender and extinction of it, and its return into a revocation, as the acts of .these parties respecting this interlineation, be construed into a revocation and redelivery. Non constat, from any thing that appears in the plea, that the paper ever passed from the hands of the party legally holding it. It was unnecessary, upon the facts stated, that it should so pass; in fact, no redelivery is averred, in the plea, nor any one of the formalities necessary to re-execution. It cannot be denied, that this part of the defence savours too much of a perversion of the solemnities and rules of the law. It is a catch upon the unwary, an effort to attach to men’s acts consequences which are directly negatived by their intentions..
As the idea of the identity of this instrument being destroyed by the interlineation, we consider jt as: springing out of an incorrect view of the nature of . the instrument and of the circumstances that fix its identity. It is not one entire thing, but a several deed for each county. A . deputation as to-the county of A., is not a deputation as to the county of.B., although written on the same paper, and comprised within the same words; it is as much a several deed, as to each coünty, as if writ-. *714 teh on several sheets of paper; as much as a policy of insurance is the several contract of each underwriter, or as a bond would be the several deed of as many individuals as executed it, if it be so expressed, making them, ifsuch be the letter of it., severally liable, and for various sums, no one for another. Interlining another county, then, left it still the original deed, as to each county taken severally, and only operated as the creation of a new power as to another county, if, in fáet, as there is no averment of a subsequent delivery, it was any thing more than a mere nugatory act. Such is certainly the good sense of the law upon, the s ject; and it is supported, we conceive, by respectable opinions, and by adjudged cases. Chief Baron Gilbert, in treating on this topic observes, “but if any immaterial part of the contract be added after sealing, and delivery, as, if A., with á blank left after his name, be bound to B., and after C. is added as a joint obligor, this does not avoid the bond, because this'does not alter the contract of A. ; for he Was bound to pay the whole money without such additioni”a And the case of Zouch v. Clay, which he quotes, as reported in Ventris, undoubtedly sustains his doctrine ;. for there the Court overruled the plea of non est factum on the interlineation, on the the ground that the bond remained the same as to him.
In this case, the bond emphatically remained *715 the same as to this defendant, for he was still liable only as to the eight counties, and no more; and was so guarded, as to make it impossible that the interlineation of a thousand other counties could alter or increase his liability, since the names of the counties are inserted in the condition specifically. As to his liability, and as to its influence upon the power conferred in the .eight counties, this interlineation was altogether insignificant,, no more than a dash of the pen, and could have done him no more injury.
There is nothing in the argument which would attach importance to it, oji the ground of produ-ing difficulty and confusion — it has, been said, even impracticability, in rendering the accounts of this Deputy. It is begging the question, and urging the very thing' as a difficulty, which the plaintiff proffers to execute. He claims a sum collected in the eight counties specified, and no more ; and unless he can prove so much collected in the eight original counties, it is very clear, that he cannot have a verdict. But is he to be prejudged ? is he not to be permitted to make out the case which he offers to prove ?
Nor is there any more weight in the argument, thal;, “ although the defendant may have beei. willing to indemnify against eight counties, it does nót follow, that he would undertake to indemnify against nine.” No one pretends to charge him with nine counties. Surely there was- nothing in the contract, to preclude the plaintiff from extending his deputation to this individual oyer his whole *716 district, had he thought proper. Could a separate deed, as to the ninth county, have been pleaded ,as a defence ?
There is no charge of positive injury in this plea, it will be observed ; nor do the facts admit a suspicion of fraudulent intention. .-The sole effect .of the interlineation, was to confide, in U., to collect in another county, without giving security. The defence rests upon certain inferences from, or consequences imputed to, the naked act of interlining the word “ Willingborough,” without even averring the acts necessary to make the instrument a deed as to that county, or the intent to revoke or re-execute the deed as to the residue
To us it appears, that it ought no more to affect the.rights^of the parties, than interlining the name of a region beyond the Atlantic, or a mere, dash of the pen-
On the subject of razures we would remark, it is to be regretted that this pleá had not been specially demurred to, that the question might have been taken from the Court and sent tb the jury. There is no doubt, that they might have found this deed several n its nature, as to each county, and, therefore, unaffected by the addition of another. The tendency of the decisions has been, to carry such questions to that tribunal; ,and,notwithstanding some contrariety of dicta, it is notv clearly settled, that a razure must make a deed void, or it is immaterial; and, therefore,. ¿sí factum is held to be the proper plea. Chief Justice Holt has declared any other form of taking advantage of a razure impertinent; (6 Mod. 215.) *717 and the rule is not now to be doubted1. But as to the principle' upon which a razure avoids a deed, it is not too much to say, that the law of the sub- , . ,.. . ject appears to have got into some contusion. Modern decisions, particularly of our own Courts, lean against the excessive rigour with which some writers and some case^ disfigure it. In the case of the United States v. Cutts, (1 Gall. 69.) a bond; that had been cancelled and mutilated, the seal torn away‘by the joint act of the defendant and the plaintiff’s bailee, was still held, and rightly held, to be sustainable as the deed of the party. In the case of Speak et al. v. United States, (9 Cranch, 28.) a bond was sustained, notwithstanding the striking out of one joint and several co-obligor, in the absence of the others, ánd the insertion of another. And.so, as to revenue bonds, there is not a Court of the United States which has not sustained them against the plea of non est factum, notwithstanding that both sum and parties have been inserted after the execution by one of the obligors,, and this, in his absence, because the contract was not altered, and the good sense of the law prevailed against its technicalities.
There is a great paucity of decisions, in modern times, on"the subject of razures and interlineations. If we mount to its origin, we find it, in the YearBooks, and in Perkins, who cites them, given a'S thé ground of suspicion and inquiry. And so, unquestionably, it ought to be, and frauds or mutilation?,.to which the parties having the custody of ■deeds are privy, cannot be taken too strongly *718 against them. But when we encounter' the doer trine, as laid down in Pigofs.case, “that when.a. deed is altered in a point material, by a stranger, without the privity of the obligee, even by drawing a pen through the midst of a material word, that it shall be void,” without reference to the fraud, privity, or gross negligence of the obligor, it certainly is time to pause; and I highly approve of the hesitation of my brother Story* ip Cutís case, as to the authority of Pigot's case. As an adjudication, the value of that .case should be limited to the single point, “ that an immaterial inter-lineation, without the privity or command of the obligee, does not avoid the bond.” The case does not. call for the decision of another point, for it is upon a special verdict, and that the only question submitted. Yet, the Reporter, who seldom lets an opportunity escape him, that furnishes an apology, for exemplifying his indefatigable research, makes it authority for a score of. positive decisions, and the introduction to a mass of law, upon questions totally distinct. But it should be noted of'this learned Judge, that his reports, like the text of Littleton, are only to be considered as the occasion or excuse for displaying his acquire-ments in the Jaw learning of his day, and expressing his opinions upon juridical topics.
It is certainly true, that .some of the decisions in the books have carried this doctrine a great way. As, for instance, the case of the lease of the Dean of Pauls, in which the'counterpart expressed a rent of 27 pounds, and the tenant al *719 tered bis deed from 26 to 27 pounds, to make it accord with the counterpart and the true contract. Yet it was held to avoid his lease. (1 Roll. 27. Cro. Eliz. 627.) But the utmost that can be made of these cases is, that they apply to those instances in which the deed is, necessarily, an entire thing; and tne reason assigned is, that the witness, can uo. longer testify to the deed, as the deed which he saw delivered.. Surely this reason is not applicable to the present casé; for, let the witness be examined upon this instrument, as to the county, of A„ as introductory to the proof of the money collected in A., and so on as to the counties B., C., and D., and what is to prevent his proving the execution of this deed? That which may just as well. have been executed in as many detached sheets, of paper as there are counties, •certainly has ■ nothing, of necessary entirety or indivisibility in its nature. Any other rale, as applied to this casé, would, we conceive, be permitting frauds to be covered by a. principle which was intended to prevent frauds;
Certificate for the defendant.

 1 loft’s Gilt.'ll!. Ventris, 185.’ The note at the end of Pigot’s case, 11 Golee, also recognises this distinction.